## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of     :
Tonya Bah as Candidate for the     :
Democratic Party's Nomination for the   :
Office of City Council     :
                         :   No. 381 C.D. 2019
Appeal of: Tonya Bah     :   Submitted: April 4, 2019


BEFORE:    HONORABLE ANNE E. COVEY, Judge

OPINION[1]
BY JUDGE COVEY                            FILED: April 16, 2019

Tonya Bah (Candidate) appeals from the Philadelphia County Common Pleas Court's (trial court) March 25, 2019 order granting Andre Mays', Herbert Wayns' and Cindy Bass' (Objectors) Petition to Set Aside (Objection Petition) Candidate's Democratic Nomination Petition for the Office of City Council (Nomination Petition). Candidate presents three issues for this Court's review: (1) whether the trial court erred by concluding that Candidate failed to comply with Section 1104(b)(2) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1104(b)(2); (2) whether the trial court erred by concluding that the fatal defect clause of Section 1104(b)(2) of the Ethics Act applied to this case;[2] and (3) whether the trial court's interpretation of Section 1104(b)(2) of the Ethics Act violates the United States and Pennsylvania Constitutions.

The facts underlying this appeal are not disputed. On March 8, 2019, Candidate's campaign manager Carol Rosenthal (Rosenthal) filed Candidate's Nomination Petition with the Philadelphia County Board of Elections (Board of Elections) to have Candidate's name printed on the Democratic ballot as candidate for

---

[1] "A reported opinion of a single judge filed after October 1, 2013, in an election law matter may be cited as binding precedent in an election law matter only." Section 414(d) of the Commonwealth Court Internal Operating Procedures, 210 Pa. Code § 69.414(d).

[2] Because Candidate's first and second issues are related, they are analyzed together herein.

the Office of City Council in the May 21, 2019 primary election. When the Board of Elections accepted Candidate's Nomination Petition, her original Statement of Financial Interest (SFI) was appended thereto. The Nomination Petition filing deadline was March 12, 2019.

On March 19, 2019, Objectors filed the Objection Petition to have Candidate's Nomination Petition stricken based on Candidate's failure to file her SFI with the City of Philadelphia's (City) Department of Records (Department), in violation of Section 1104(b)(2) of the Ethics Act. On that same day, Rosenthal filed a copy of Candidate's SFI with the Department. Also on March 19, 2019, the trial court issued a rule to the Board of Elections to show cause why Candidate's name should not be removed from the primary election ballot.

The trial court held a hearing on the rule to show cause on March 21, 2019. On March 25, 2019, the trial court granted the Objection Petition and ordered that Candidate's name be removed from the ballot. Candidate appealed to this Court.[3]

In her appeal, Candidate spends a significant amount of her 78-page brief arguing that the trial court erred by concluding that she failed to comply with Section 1104(b)(2) of the Ethics Act. She specifically avers that the Ethics Act and the SFI instructions are ambiguous, that her SFI filing with the Board of Elections satisfied Section 1104(b)(2) of the Ethics Act, that the Department was not designated as the City's governing authority, Candidate was not notified that she had to also file her SFI with the Department, that the courts must liberally construe Section 1104(b)(2) of the Ethics Act, and that *In re Nomination Petition of Guzzardi*, 99 A.3d 381 (Pa. 2014),

---

[3] "In reviewing an order adjudicating challenges to a nomination petition, our standard of review permits reversal only where the findings of fact are unsupported by substantial evidence, where there was an abuse of discretion, or where an error of law was committed." *In re Nomination Petition of Beyer*, 115 A.3d 835, 838 (Pa. 2015).

does not apply herein. Candidate also contends that the trial court erred by concluding that the fatal defect clause of Section 1104(b)(3) of the Ethics Act applied to this case.

Initially, it is well settled that election laws "must be construed liberally 'so as not to deprive an individual of [her] right to run for office, or the voters of their right to elect a candidate of their choice.' *Nomination Petition of Ross*, . . . 190 A.2d 719, 720 ([Pa.] 1963)[.]" *In re Nomination Petitions of Scott*, 138 A.3d 687, 691 (Pa. Cmwlth. 2016). Accordingly, this Court will strike a candidate's name from the ballot only when constitutionally or statutorily compelled to do so.

At issue in the instant appeal is Section 1104(b) of the Ethics Act, which states:

> (1) Any candidate for a State-level public office shall file a statement of financial interests for the preceding calendar year with the commission on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.
>
> (2) **Any candidate for county-level or local office shall file a statement of financial interests** for the preceding calendar year **with the governing authority of the political subdivision in which [s]he is a candidate** on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests **shall also be appended to such petition**.
>
> (3) No petition to appear on the ballot for election shall be accepted by the respective . . . local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). **Failure to file the statement in accordance with the provisions of this chapter shall**, in addition to any other penalties provided, **be a fatal defect to a petition to appear on the ballot**.

65 Pa.C.S. § 1104(b) (emphasis added).

3

Section 1104(b)(2) of the Ethics Act instructs that, as a local office candidate, Candidate *shall* file her original SFI with the governing authority of the political subdivision, *and shall* append a copy thereof to her Nomination Petition.[4] Section 1104(b)(3) of the Ethics Act clearly states that Candidate's failure to file her SFI in accordance with Section 1104(b)(2) of the Ethics Act is a fatal defect. The statutory mandate and the General Assembly's intent is clear. Contrary to Candidate's assertion, the language is not ambiguous. In fact, this Court has previously described that language as "absolute and unequivocal[.]" *In re Ross*, 109 A.3d 781, 786 (Pa. Cmwlth.), *aff'd sub nom. In re Substitute Nomination Certificate of Ross*, 101 A.3d 1150 (Pa. 2014); *see also In re Nomination Petition of Prosperino*, 972 A.2d 92 (Pa. Cmwlth. 2009).

In addition, Candidate's SFI contained nearly identical instructions that she, as a candidate for municipal office, shall "[f]ile the [original SFI] with the Clerk/Secretary in the Municipality in which you are a candidate[,]" *and* "[a]ppend a copy to [the] nomination petition when filed with the County Board of Elections." Notes of Testimony, March 22, 2019 (N.T.), Ex. R-1 at 12. Rosenthal admitted at the trial court hearing that the SFI form instructed that Candidate "ha[d] to file an original [SFI] and an additional filing." N.T. at 15.

This Court has further ruled that Section 1104(b) of the Ethics Act requires *two distinct SFI filings*:

> The Ethics Act clearly requires a candidate for a county-level [or local] office to file a statement of financial interests for

---

[4] "The word 'shall' by definition is mandatory, and it is generally applied as such." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007). "There is no question that the General Assembly intended by the clear language in the Ethics Act to require candidates for public office to file their [statements of financial interests] in a particular place and by a particular date. *See* Section 1104 of the Ethics Act." *Reuther v. Delaware Cty. Bureau of Elections*, 172 A.3d 738, 745 n.17 (Pa. Cmwlth. 2017), *aff'd* (Pa. 6 MAP 2018, filed Mar. 26, 2019).

the preceding calendar year **with the governing authority of the political subdivision in which [s]he is a candidate** on or before the last day for filing a petition to appear on the ballot for election. **This is the <u>first filing</u> required by the statute. Attaching to a candidate's nomination petition is the <u>second filing</u> required by Section 1104(b)(2) [of the Ethics Act]**. As such, this Court is constrained to follow the clear directive of the Ethics Act. If the General Assembly had wished to carve out an exception for certain or specific county level offices, such as the Office of [City Council], it would have done so and this Court does not have the authority to insert such an exception.

*Prosperino*, 972 A.2d at 96 (bold and underline emphasis added).

Here, Rosenthal timely filed Candidate's original SFI and Nomination Petition with the Board of Elections (*e.g.*, second SFI filing requirement). However, neither Candidate, Rosenthal, nor anyone else on Candidate's behalf, timely filed Candidate's SFI with the "governing authority of the [City]" (*e.g.*, first filing requirement). 65 Pa.C.S. § 1104(b)(2); *see also* N.T. at 2, 16 (counsel stipulation). Rather, Rosenthal belatedly filed Candidate's SFI with the Department on March 19, 2019, after being made aware of the error. Accordingly, Candidate did not satisfy the clear requirements of Section 1104(b)(2) of the Ethics Act.[5]

This Court acknowledges that the Ethics Act does not define "governing authority," nor mandates that each political subdivision clearly define who its governing authority is and/or where SFI filings are to be made to satisfy Section 1104(b)(2) of the Ethics Act. *See In re Nomination Petition of McMonagle*, 793 A.2d

---

[5] The Ethics Act and the SFI form instructions make clear that two SFI filings were necessary. Rosenthal admitted at the trial court hearing that the SFI form directed two SFI filings. Candidate was aware that the Mayor and the City Council govern the City. *See* Candidate Br. at 28. If the City's designated governing authority was as elusive as Candidate claims, then she or her representative was, at a minimum, on notice to make an inquiry as to the exact location for the "governing authority of the [City]" SFI filing. 65 Pa.C.S. § 1104(b)(2).

5

174 (Pa. Cmwlth. 2002).[6]  However, it is evident from the record that Candidate's failure to make her additional SFI filing was not caused by any statutory ambiguity in Section 1104(b)(2) of the Ethics Act (as to which physical office would accept Candidate's SFI - the City's governing authority), or from the SFI form instruction that two SFI filings were required.

There is no record evidence that Candidate was prepared with an original and a copy of Candidate's SFI on March 8, 2019 to file in two locations, or that she attempted to make an additional SFI filing, or that she inquired about the additional SFI filing requirement.  Rosenthal admitted at the trial court hearing that she did not make those inquiries until *after* she became aware on March 18, 2019 that Candidate's Nomination Petition would be challenged on the basis that Candidate failed to *also* file her SFI with the Department.[7]  *See* N.T. at 8-11.  Despite that the Ethics Act and the SFI form specify that two SFI filings were necessary, Candidate now blames the Board of Elections (both its clerk and its Instructions) for not informing her that the original SFI had to be filed in a separate location.[8]  *See* N.T. at 8-10, 18.  However, Candidate

---

[6]     [C]ompliance with the filing rules is not always so simple as the General Assembly envisioned.  For instance, the Ethics Act does not define 'file' or 'governing authority,' and thus fails to provide much needed clarity, both for putative candidates and for local officials who must establish a mechanism for accepting the filings.  In *In re* [*Petition Objecting to the Nominating Petition of*] *Capra*, 693 A.2d 647 (Pa. Cmwlth. 1997), a panel of this court recognized that candidates throughout this Commonwealth are confronted by a vast diversity of local governments.

*McMonagle*, 793 A.2d at 177.

[7] Candidate's SFI was appended to the Nomination Petition as required, so the Board of Elections accepted it.  Rosenthal testified that, since the Board of Elections' clerk accepted Candidate's original SFI (rather than a copy) with her Nomination Petition, she had no reason to ask if there was another place to file the SFI.  *See* N.T. at 10.  However, both Section 1104(b)(2) of the Ethics Act and the SFI's instructions belie that argument.

[8] There is no record evidence that the Board of Elections misled Rosenthal into believing she did not also have to file Candidate's SFI with the City's governing authority.

6

was running for City Council, and admits in her brief to this Court that "[t]he governing authority of [the City] is clearly the Mayor and City Council acting together." Candidate Br. at 28. Candidate did not prove at the trial court hearing that she intended or attempted to file her original SFI in a second location, let alone with the Mayor or City Council, before the filing deadline. Rather, the record reveals that Candidate simply took no steps or intended to make two distinct SFI filings. Accordingly, Candidate's failure to file her SFI with the Department was not because she did not know who the governing authority was or that it was unclear that the Department was the repository for such documents.

Under the circumstances, this Court is not authorized to grant Candidate the relief she requests. The Pennsylvania Supreme Court in *Guzzardi* expressly reaffirmed that the courts are prohibited from applying equity in election cases.[9] In *Guzzardi*, objectors filed a petition to strike the candidate's name from the ballot because he did not timely file his statement of financial interests with the Pennsylvania

_____

[9] Candidate cites to this Court's opinions in *In re Nomination Petition of Grimaud* (Pa. Cmwlth. No. 418 C.D. 2017, filed April 25, 2017) and *In re Nomination Petition of Tidball* (Pa. Cmwlth. No. 417 C.D. 2017, filed May 1, 2017) to support her claim that the Board of Elections is, for all intents and purposes, the City's governing authority, and that her SFI filing with her Nomination Petition in that office satisfied Section 1104(b)(2) of the Ethics Act's two-filing rule. In both *Grimaud* and *Tidball*, substantial evidence supported the finding that Wyoming County's election office was the county's long-standing, designated governing authority; the election office checklist specified that statements of financial interests are to be filed in the election office; and the election office clerks make copies of the statements and separately file the copies, thereby satisfying Section 1104(b)(2) of the Ethics Act's two-filing rule. However, here, there is no such evidence that the City has a history and/or a long-standing published policy that makes the Board of Elections the City's governing authority for purposes of Section 1104(b)(2) of the Ethics Act. Accordingly, *Grimaud* and *Tidball* are inapposite.

Candidate also cites *In re Nomination Petition of Caruso* (Westmoreland C.C.P. No. 2561 of 2009), *aff'd* (Pa. Cmwlth. No. 507 C.D. 2009, filed April 9, 2009), wherein the trial court concluded that since the record established that the Westmoreland County election office was its governing authority, the candidate satisfied Section 1104(b)(2) of the Ethics Act with a single filing of his statement of financial interests in the election office. However, in *Prosperino*, this Court specifically held that *Caruso* was distinguishable because Westmoreland County was not a home rule authority. Because the City in this case is a home rule authority, *Caruso* is also inapposite here.

7

State Ethics Commission (Ethics Commission). "Although an original statement of financial interests was appended to this [nomination] petition, Mr. Guzzardi failed to make the mandatory tender to the Ethics Commission prior to the statutory deadline." *Id.* at 382. This Court employed equitable principles and denied the petition to strike based on candidate's explanations for his late submission. On appeal, the Supreme Court reversed, explaining:

> [T]he judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania.[10] At least **where the Legislature has attached specific consequences to particular actions or omissions, Pennsylvania courts may not mitigate the legislatively[-]prescribed outcome through recourse to equity**.

*Guzzardi*, 99 A.3d at 386 (emphasis added).

Candidate asserts that *Guzzardi* is distinguishable and, thus, inapplicable here. However, despite that Section 1104(b)(1) of the Ethics Act that was at issue in *Guzzardi* specifies that a state-level candidate's statements of financial interests are to be filed with the nomination petition and the Ethics Commission (as opposed to a "governing authority" under Section 1104(b)(2) of the Ethics Act, as is the case herein), the issue in both cases is a candidate's failure to observe the two-filing rule. In *Guzzardi*, as in this matter, the candidate filed his statement of financial interests, thereby publically disclosing it, but he did not file in all the statutorily-mandated places. The *Guzzardi* Court declared that the Ethics Act expressly directed that the violation was fatal and because the General Assembly had specifically attached the consequence

---

[10] "Elections are appropriately regulated by the political branch precisely because they are inherently political. This essential legislative governance fosters orderly, efficient, and fair proceedings[,]" *Guzzardi*, 99 A.3d at 385,

8

for failing to adhere to the statutory requirements, the Court must enforce that clear directive. Further, Section 1104(b)(3) of the Ethics Act renders errors under *both* Section 1104(b)(1) and Section 1104(b)(2) of the Ethics Act as fatal. The *Guzzardi* Court's reasoning is applicable here and controls this Court's decision in the instant matter.

Where, as here, "the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Thus, "[t]he Court may not rewrite a statute[.]" *Bender v. Pa. Ins. Dep't*, 893 A.2d 161, 164 (Pa. Cmwlth. 2006). Moreover, "[w]e cannot judicially alter the interpretation of a statute where the General Assembly has failed to do so legislatively." *Ford v. Dep't of Transp., Bureau of Driver Licensing*, 776 A.2d 367, 370 (Pa. Cmwlth. 2001). Because Section 1104(b)(3) of the Ethics Act clearly states that Candidate's failure to timely file her SFI with the Board of Elections *and* the City's governing authority is fatal, the trial court properly granted the Objection Petition and removed Candidate's name from the primary election ballot.

Candidate also argues that the trial court's interpretation of Section 1104(b)(2) of the Ethics Act violates the First Amendment to the United States (U.S.) Constitution (First Amendment)[11] and Article I, Section 5 of the Pennsylvania

---

[11] The First Amendment provides []:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. The First Amendment is made applicable to the states via the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666 . . . (1925).

*In re Nomination Petitions and Papers of Stevenson*, 40 A.3d 1212, 1216 n.4 (Pa. 2012).

Constitution.[12]  Objectors contend that Candidate waived these issues by failing to raise them before the trial court.

Preliminarily, Pennsylvania courts do not generally permit the raising of constitutional issues for the first time on appeal.  *See In re F.C. III*, 2 A.3d 1201 (Pa. 2010); *see also Kuziak v. Borough of Danville*, 125 A.3d 470 (Pa. Cmwlth. 2015).  Our Supreme Court has ruled:

> Issue preservation is foundational to proper appellate review. Our rules of appellate procedure mandate that '[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.'  Pa.R.A.P. 302(a).  By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court, like an administrative agency, must be given the opportunity to correct its errors as early as possible.  Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. Finally, concepts of fairness and expense to the parties are implicated as well.

*In re F.C. III*, 2 A.3d 1201, 1211-12 (Pa. 2010) (citations omitted).

---

[12] Article I, Section 5 of the Pennsylvania Constitution states: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."  Pa. Const. art. I, § 5.

> Article I, Section 5 [of the Pennsylvania Constitution] guarantees our citizens an equal right, on par with every other citizen, to elect their representatives.  Stated another way, the actual and plain language of Section 5 mandates that all voters have an equal opportunity to translate their votes into representation.  This interpretation is consistent with both the historical reasons for the inclusion of this provision in our Commonwealth's Constitution and the meaning we have ascribed to it through our case law.

*League of Women Voters v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018).

Here, Candidate did not raise these constitutional issues as a defense to the Objection Petition, nor were they raised before the trial court. Although Candidate's counsel argued at the trial court hearing that the term "governing authority" in Section 1104(b)(2) of the Ethics Act could be confusing, *see* N.T. at 19-20, 26-28, the first time Candidate raised any constitutional claim was in the Jurisdictional Statement she filed with her April 1, 2019 notice of appeal.[13] Candidate now argues that the Ethics Act's penalty provision cannot be statutorily or constitutionally imposed when the Ethics Act merely references "governing authority," and "there has been no clear written designation of a correct place of [SFI] filing[.]" Candidate Br. at 70-71. However, because Candidate's constitutional issues were raised for the first time on appeal, they are waived.[14] *See* Pa.R.A.P. 302(a).

Notwithstanding, even if this Court were to consider Candidate's constitutional arguments, given that this Court has determined, based on the record, that Candidate's failure to file her SFI with the City's governing authority before March 12, 2019 was due to her failure to comply with the two-filing mandate in Section 1104(b)(2) of the Ethics Act and/or the SFI's instructions, and *not* because of any purported confusion about who is the City's governing authority and where the filing was to be made, Candidate's constitutional arguments are misplaced.

---

[13] Candidate also contends that the trial court's action of striking her Nomination Petition is unconstitutional. The basis of her argument is the Ethics Act's undefined term "governing authority," together with its fatality penalty. Candidate could have made that argument to the trial court below, but she did not. Accordingly, this Court is precluded from addressing it for the first time on appeal. *See In re F.C. III*; *see also Kuziak*.

[14] Objectors' assertion that Candidate's constitutional challenges are waived because she failed to notify the Attorney General thereof in accordance with Rule 521(a) have no merit. Where, as in this case, the challenge is to the statute's constitutionality *as applied*, notice to the Attorney General is not required. *See* Rule 521(a); *see also* Darlington et al., Pennsylvania Appellate Practice (2018-2019) § 521:1; *Cty. of Bucks v. Cogan*, 615 A.2d 810 (Pa. Cmwlth. 1992) (Rule 521(a) is patterned after similar Pennsylvania Rule of Civil Procedure No. 235 referenced in *Cogan*).

Based on the foregoing, the trial court's order is affirmed.


_____

ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petition of : 
Tonya Bah as Candidate for the : 
Democratic Party's Nomination for the : 
Office of City Council : 
                                       :   No. 381 C.D. 2019
Appeal of: Tonya Bah : 

## O R D E R

AND NOW, this 16th day of April, 2019, the Philadelphia County Common Pleas Court's March 25, 2019 order is affirmed.

_____
ANNE E. COVEY, Judge