DISSENTING OPINION BY
JUDGE COVEY
I respectfully dissent from the Majority’s ruling that, by using the phrases “insofar as,” “to the extent that” and “in this respect” in its conclusion in Robinson Township v. Commonwealth, 623 Pa. 564, 83 A.3d 901 (2013) (Robinson Twp. 7), our Supreme Court held that if there are circumstances in which subsections (c) and (e) of Section 3215 of the Oil and Gas Act (Act 13), 58 Pa.C.S. § 3215(c), (e), are applicable independently of the Section 3215(b) well permit decisional process, they are not enjoined.
The Majority states: “Much of the parties’ respective arguments invites the Court to parse the words used by the Supreme Court in Part V [Severability] of its opinion in Robinson Twp. I. For purposes of enforcing the Supreme Court’s decision in Robinson Twp. I, however, [Part VI] the conclusion is paramount.” Majority Op. at 827 (emphasis added). I disagree. To rely on specific words in the Supreme Court’s conclusion misrepresents the Court’s ruling, especially in light of the fact that the Supreme Court included a specific discussion on Section 3215’s sever-ability. Parsing certain words, as the Majority has done to support its decision, becomes unnecessary when the statute, and the Supreme Court’s rationale and ruling are read in context.
Section 3215 of Act 13 provides in pertinent part:
(a) General rule. — Wells may not be drilled within 200 feet, or, in the case of an unconventional gas well, 500 feet, measured horizontally from the vertical well bore to a building or water well, existing when the copy of the plat is mailed as required by [S]ection 3211(b). [of Act 13] (relating to well permits) without written consent of the owner of the building or water well. Unconventional gas wells may not be drilled within 1,000 feet measured horizontally from the vertical well bore to any existing water well, surface water intake, reservoir or other water supply extraction point used by a water purveyor without the written consent of the water purvey- or. If consent is not obtained and the distance restriction would deprive the owner of the oil and gas rights of the right to produce or share in the oil or gas underlying the surface tract, the well operator shall be granted a variance from the distance restriction upon submission of a plan identifying the additional measures, facilities or practices as prescribed by the [Department [of Environmental Protection (DEP) ] to be employed during well site construction, drilling and operations. The variance shall include additional terms and conditions required by [DEP] to ensure safety and protection of affected persons *833 and property, including insurance, bonding, indemnification and technical requirements. Notwithstanding [S]ection 3211(e) [of Act 13], if a variance request has been submitted, [DEP] may extend its permit review period for up to 15 days upon notification to the applicant of the reasons for the extension.
(b)Limitation.—
(1) No well site may be prepared or well drilled within 100 feet or, in the case of an unconventional well, 300 feet from the vertical well bore or 100 feet from the edge of the well site, whichever is greater, measured horizontally from any solid ■ blue lined stream, spring or body of water as identified on the most current minute topographic quadrangle map of the United States Geological Survey.
(2) The edge of the disturbed area associated with any unconventional well site must maintain a 100-foot setback from the edge of any solid blue lined stream, spring or body of water as identified on the most current 7jk minute topographic quadrangle map of the United States Geological Survey.
(3) No unconventional well may be drilled within 300 feet of any wetlands greater than one acre in size, and the edge of the disturbed area of any well site must maintain a 100-foot setback from the boundary of the wetlands.
(4) [DEP] shall waive the distance restrictions upon submission of a plan identifying additional measures, facilities or practices to be employed during well site construction, drilling and operations necessary to protect the waters of this Commonwealth. The waiver, if granted, shall include additional terms and conditions required by [DEP] necessary to protect the waters of this Commonwealth. Notwithstanding [S]ection 3211(e) [of Act 13], if a waiver request has been submitted, [DEP] may extend its permit review period for up to 15 days upon notification to the applicant of the reasons for the extension.
(c) Impact. — On making a determination on a well permit, [DEP] shall consider the impact of the proposed well on public resources, including, but not limited to:
(1) Publicly owned parks, forests, game lands and wildlife areas.
(2) National or State scenic rivers.
(3) National natural landmarks.
(4) Habitats of rare and endangered flora and fauna and other critical communities.
(5) Historical and archaeological sites listed on the Federal or State list of historic places.
(6) Sources used for public drinking supplies in accordance with subsection (b).
(d) Consideration of municipality and storage operator comments. — [DEP] may consider the comments submitted under [S]ection 3212.1 (relating to comments by municipalities and storage operators) in making a determination on a well permit. Notwithstanding any other law, no municipality or storage operator shall have a right of appeal or other form of review from [DEP’s] decision.
(d.l) Additional protective measures. — [DEP] may establish additional protective measures for storage of hazardous chemicals and materials intended to be used or that have been used on an unconventional well drilling site within 750.feet of a solid blue lined stream, spring or body of water identified on the most current 7]/¿ minute topographic *834 quadrangle map of the United States Geological Survey.
(e) Regulation criteria. — The Environmental Quality Board shall develop by regulation criteria:
(1) For [DEP] to utilize for conditioning a well permit based on its impact to the public resources identified under subsection (c) and for ensuring optimal development of oil and gas resources and respecting property rights of oil and gas owners.
(2) For appeal to the Environmental Hearing Board of a permit containing conditions imposed by [DEP]. The regulations shall also provide that [DEP] has the burden of proving that the conditions were necessary to protect against a probable harmful impact of the public resources.
(f) Floodplains.—
[[Image here]]
(g) Applicability.—
(1) This section shall not apply to a well proposed to be drilled on an existing well site for which at least one well permit has been issued prior to the effective date of this section.
(2) Nothing in this section shall alter or abridge the terms of any contract, mortgage or other agreement entered into prior to the effective date of this section. .
58 Pa.C.S. § 3215 (text emphasis added).
In Robinson Twp. I, the Pennsylvania Supreme Court declared Section 3215(b)(4) of Act 13 unconstitutional. In determining whether any other subsections of Section 3215 were inseparably connected to Section 3215(b)(4) such that it could not be presumed the General Assembly intended to enact the remaining subsections without the constitutionally-infirm provision, our Supreme Court expressly expounded:
Setting aside the question of global sev-erability — i.e., whether the specific provisions held to be unconstitutional require that the entire Act be enjoined— there are obvious consequences of certain of our holdings. Thus, we have already recognized that Section 3215(b)(4) which addresses waivers of the general rule requiring setbacks for the protection of certain waters of the Commonwealth, is a key part of the Section 3215(b) scheme. It would appear that the General Assembly did not intend for the setback provision to operate without allowing industry operators to secure waivers from the setbacks. Absent the enjoined Section 3215(b)(4), the remaining parts of Section 3215(b)— which the citizens do not challenge on appeal — are incomplete and incapable of execution in accordance with the legislative intent. Having held that Section 3215(b)(4) is unconstitutional, we conclude that the remaining parts of Section 3215(b) are not severable. Accordingly, application of Section 3215(b) is enjoined.
Moreover, insofar as Section 3215(c) and (e) are part of the Section 3215(b) decisional process, these provisions as well are incomplete and incapable of execution in accordance with legislative intent. Application of Section 3215(c) and (e) is, therefore, also enjoined.
Robinson Twp. I, 83 A.3d at 999 (emphasis added). The Supreme Court used the identical reasoning for enjoining Section 3215(b) in its entirety, as it did to enjoin Sections 3215(c) and (e).
In addition, Section 3215(c)(6) expressly references Section 3215(b). The Supreme Court expressly enjoined Section 3215(b) in its entirety because it found “the re *835 maining parts of Section (b) ... are incomplete and incapable of execution in accordance with legislative intent.” Robinson Twp. I, 83 A.3d at 999. A statutory provision that specifically cites a statutory section that has been declared void, makes the dependent provision void. See 1 Pa.C,S. § 1925. If the Supreme Court had intended for only Section 3215(c)(6) to be enjoined, then it would have so ruled. Rather, it held that “[application of Section 3215(c) and (e) is, therefore, also enjoined.” Robinson Twp. I, 83 A.3d at 999 (emphasis added).
Similarly, Section 3215(e)(1) explicitly cites to Section 3215(c). The Supreme Court in enjoining the “[application of Section 3215(c) and (e)” determined, on the same basis that it enjoined Section 3215(b), that they are “incomplete and incapable of execution in accordance with legislative intent ... [.]” Robinson Twp. I, 83 A.3d at 999.
Accordingly, I conclude that the Supreme Court expressly and unequivocally ruled that because Sections 3215(c) and (e) could not be severed from Section 3215(b), their application was enjoined. This conclusion is further supported by Justice Baer’s statement in his Concurring Opinion, wherein he opined: “Given that I would strike Section 3215(b)(4) and (d), I further agree with the lead opinion that the entirety of subsection (b), as well as subsections (c) and (e) would be ‘incapable of execution’ and must be enjoined.” Id. at 1009.
This Court is prohibited from revisiting the Supreme Court’s holding in Robinson Twp. I.
[W]e, as an intermediate appellate court are bound by the decisions of the Pennsylvania Supreme Court and are powerless to rule that decisions of that Court are wrongly decided and should be overturned. See, e.g., Nunez v. Redevelopment Auth[.] of the City of Phila[.], ... 609 A.2d 207, 209 ([Pa.Cmwlth.] 1992) (‘as an intermediate appellate court, we are bound by the opinions of the Supreme Court.’).
Griffin v. Se. Pa. Trans. Auth., 757 A.2d 448, 451 (Pa.Cmwlth.2000) (emphasis added).
After the Supreme Court’s decision in Robinson Twp. I, DEP filed an Application for Reargument (Application) with the Supreme Court. Therein, DEP asserted that “the [Supreme] Court’s holding that [Sections] 3215(c) and (e) are not severa-ble from [S]ection 3215(b) misapprehends Section 3215 and bears further review on remand.”[1] DEP Robinson Twp. I App. for Reargument at 9 (emphasis added). DEP, herein, is doing nothing more than asking this Court to revisit the Supreme Court’s ruling in Robinson Twp. I. Unlike the Majority, I would not reopen the litigation or render judgment on an issue the Supreme Court has already decided.
Based on the foregoing, I would hold that the Supreme Court’s decision does not require the “parsing] [of] words” to ascertain its holding. Majority Op. at 827. Nor do I believe that the Supreme Court ever *836 intended the parties or this Court to rely upon the Statutory Construction Act of 1972[2] to interpret its decision. Rather, the Supreme Court unequivocally stated, without qualification, that “[alpplication of Section 3215(c) and (e) is, therefore, also enjoined.” Robinson Twp, I, 83 A.3d at 999 (emphasis added). To hold otherwise gives no effect to this clear language or Justice Baer’s express language: “I further agree with the lead opinion that the entirety of subsection (b), as well as subsections (c) and (e) would be ‘incapable of execution’ and must be enjoined.” Id. at 1009 (emphasis added).
Judge Cohn Jubelirer joins in this dissenting opinion.

. The Supreme Court denied DEP’s Application for Reargument on February 21, 2014. See Supreme Court Docket No. 63 MAP 2012. Contrary to the Majority’s statement, the Dissent makes no presumption regarding the basis as to why the Supreme Court denied the Application. Rather, reference to the Application is for the sole purpose of revealing DEP’s acknowledgement in its Application that the Supreme Court held that Sections 3215(c) and (e) were not severable from Section 3215(b). “It is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate," Lycoming Cnty. v. Pa. Labor Relations Bd., 943 A.2d 333, 335 n. 8 (Pa.Cmwlth.2007).

. 1 Pa, C.S. §§ 1501-1991.